UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-12943-RGS

PETER ALFANO

v.

THOMAS LYNCH

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

May 23, 2016

On July 11, 2014, plaintiff Peter Alfano was taken into protective custody by Thomas Lynch, a Town of Franklin police lieutenant. At the time, Lt. Lynch was working a private security detail at the Xfinity Center, a concert venue in Mansfield, Massachusetts. Alfano claims that Lynch detained him without probable cause in violation of his Fourth Amendment right to be free from unlawful seizure by State officials.[1] Alfano seeks damages pursuant to the Federal Civil Rights Act, 42 U.S.C. § 1983. Before the court is Lynch's motion for summary judgment, or in the alternative, for an award of qualified immunity.

---

[1] Lynch does not dispute that while outside his official jurisdiction, he was exercising official State powers. *See Parilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445, 449 (1st Cir. 1997).

BACKGROUND

The material undisputed facts, taken in the light most favorable to Alfano as the nonmoving party, are as follows.  On July 11, 2014, Alfano and two friends, Jordan Pekor and Jonathan Pekor, set out to the Xfinity Center to attend a country music concert.  The event drew some 20,000 fans, many of whom (like Alfano and his friends) were drinking, some heavily.  In anticipation of a boisterous crowd, concert organizers had hired a contingent of off-duty police officers and private security guards to maintain order.  The police detail was commanded by Mansfield Police Chief Ronald Sellon.  Over the course of the evening, officers arrested twelve individuals and took another fifty-one persons, among them Alfano, into protective custody.  One officer was seriously injured while making an arrest.

Lt. Lynch was initially assigned to patrol the entrance to the Xfinity Center.  Because of the number of persons detained for public intoxication, he was sent to assist officers guarding the holding area at the rear of the Center.  Alfano and the Pekors arrived at the Center on a charter bus from Boston's South Station.  During the bus ride, Alfano and the Pekors drank beer.  They continued to drink in the parking lot of the Xfinity Center while waiting for the concert to begin.  Alfano testified that he consumed between

six and nine alcoholic drinks during the day.[2] Dep. of Peter Alfano, Dkt. # 18-1 at 5-9.

When Alfano attempted to enter the Center with the Pekors to take his seat, he was denied entry at the security checkpoint. Two private security guards escorted him instead to the holding area.[3] There Lt. Lynch spoke with Alfano for ten to fifteen minutes. Alfano appeared to be steady on his feet, and answered Lynch's questions in a normal voice. Alfano acknowledged to Lynch that he had been drinking. Lynch administered three field sobriety tests.[4] Alfano failed the one-leg stand.[5] Lynch asked Alfano to take a Breathalyzer test. Alfano refused. Lynch then placed Alfano into protective

---

[2] Alfano testified that he consumed "four or five" beers during the bus ride, "two or three" more in the parking lot, and that he may have had an additional drink at South Station prior to departing. Dep. of Peter Alfano, Dkt. # 18-1 at 5-9.

[3] Lt. Lynch states that the guards told him that they had observed Alfano stumble while attempting to pass through the security check point. Alfano disputes the truth of the statement.

[4] Lynch asked Alfano to recite the alphabet; to stand on one leg for fifteen seconds; and to perform a horizontal gaze nystagmus test, which required Alfano to follow with his eyes a moving pen held by Lynch.

[5] Lynch's Protective Custody Worksheet, Dkt. #21-8, recorded that Alfano failed all three field sobriety tests, and that he was unsteady on his feet, spoke with slurred speech, and had glassy eyes. Alfano acknowledges that he failed the one-leg stand test and refused to submit to a Breathalyzer test, but disputes the contents of the Worksheet.

custody. *See* Mass. Gen. Laws ch. 111B. Alfano was eventually transferred to a holding cell at the Mansfield police station. He was released later that night into the custody of the Pekors.

Alfano filed this Complaint in the District of Massachusetts on July 13, 2015. The sole count of Alfano's Complaint alleges a violation of his Fourth Amendment right against unreasonable seizure. Discovery concluded on March 25, 2016. On April 22, 2016, Lynch moved for summary judgment claiming, *inter alia*, a defense of qualified immunity.

## DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The Protective Custody Statute (PCS), Mass. Gen. Laws ch. 111B, permits officers to take into custody persons who, "by reason of the consumption of intoxicating liquor," are "(1) unconscious, (2) in need of medical attention, (3) likely to suffer or cause physical harm or damage property, or (4) disorderly." *Id.*, § 3. *See Commonwealth v. St. Hilaire*, 43 Mass. App. Ct. 743, 747 (1997) ("[D]efendant's intoxication, his need of

medical attention, and the danger he presented to himself [by his belligerent behavior] place [him] squarely within the definition of an 'incapacitated person'").  By statutory declaration, the seizure of an "incapacitated" person is not an arrest, although it does amount to a seizure for Fourth Amendment purposes.  *See Commonwealth v. O'Connor*, 406 Mass. 112, 120 n.7 (1989).

Alfano's single-count Complaint is framed on the proposition that, under the PCS, police must have probable cause to believe that a person is incapacitated before initiating custody.  Compl. ¶¶ 11, 25; Pl.'s Mem. - Dkt. # 19 at 6.  Because this is an undecided issue under Massachusetts law, the Complaint will be dismissed on grounds of qualified immunity.

"[T]he qualified immunity inquiry . . . allows . . . for the inevitable reality that '*law enforcement officials will in some cases reasonably but mistakenly conclude* that [their conduct] is [constitutional], and . . . that . . . those officials* – like other officials who act in ways they reasonably believe to be lawful – *should not be held personally liable*.'"  *Hegarty v. Somerset Cty.*, 53 F.3d 1367, 1373 (1st Cir. 1995), quoting *Anderson v. Creighton,* 483 U.S. 635, 641 (1987) (emphasis in original).  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Rivera v.*

5

*Murphy*, 979 F.2d 259, 263 (1st Cir. 1992), quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (*per curiam*).

To overcome a defense of qualified immunity, the right alleged to have been violated must have been "clearly established" at the time of the alleged violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To be clearly established, "[t]he right in question . . . cannot be simply a generalized right, like the right to due process. . . . It must be clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable official in the defendant's position to know that what the official is doing violates that right." *Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir. 1989), quoting *Anderson*, 483 U.S. at 640. As a rule, a right becomes "clearly established" when it is enunciated by a court of controlling authority in the defendant's jurisdiction in a case sufficiently similar in its facts "that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). While there are instances in which a court might benefit both the police and the general public by "[d]eciding the constitutional question before addressing the qualified immunity question," *id.* at 609, there are also cases "in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether

the relevant facts make out a constitutional question at all." *Pearson v. Callahan*, 555 U.S. 223, 239 (2009).  This is one of those cases.

The Supreme Judicial Court has yet to make a definitive determination whether police require probable cause to "seize" an incapacitated person under the PCS, or may act on the more lenient standard of reasonable belief. *See O'Connor*, 406 Mass. at 120 n.6 (1989) ("We need not decide whether any lesser standard would be acceptable under Mass. Gen. Laws ch. 111B, § 8, than probable cause to believe a person is incapacitated. . . . In *Commonwealth v. Tomeo*, 400 Mass. 23 (1987), where the defendant did not challenge the validity of G.L. c. 111B, § 8, we discussed the statute in terms of the officer's reasonable belief that the defendant was a risk to his own safety and the safety of others (*id.* at 24) and an officer's reasonable belief that his safety required that he search an incapacitated person (*id.* at 25.")).  *See also Ringuette v. City of Fall River*, 888 F. Supp. 258, 265 (D. Mass. 1995) (Saris, J.) ("[E]ven if the standard were the higher one of probable cause, as suggested by *O'Connor,* the police seizure would pass muster.").  While it is true that in *Commonwealth v. O'Brien*, 434 Mass. 615, 622 (2001) (cited by Alfano), the Court referred to probable cause in identifying the standard that it was applying *in that case*, the reference is clearly dicta as indicated by the

7

Court's supporting citation to footnote 6 of the *O'Connor* opinion suggesting that no more than a "reasonable belief" is required for police to act.

Given this lack of clarity, a reasonable officer in Lt. Lynch's situation, could have reasonably believed that that the PCS authorized the detention of a person believed to be incapacitated on a less stringent standard (reasonable belief) than probable cause. Here, the uncontested facts of Alfano's admission to Lt. Lynch that he had been drinking, his failure to pass at least one of the field sobriety tests administered by Lynch,[6] his refusal to take a Breathalyzer test,[7] and the inferences that Lynch could draw from the fact that security guards denied Alfano admission to the concert and instead delivered him to the holding compound, would support a reasonable officer's belief that Alfano was "by reason of the consumption of intoxicating liquor . . . likely to suffer or cause physical harm or damage property."[8]

---

[6] Alfano does not dispute that police acting under the PCS may on reasonable suspicion require persons suspected of intoxication to submit to sobriety tests. Pl.'s Mem. - Dkt. # 19 at 6.

[7] Because the PCS does not define a criminal offense, the Declaration of Rights, art. 12 prohibition against the introduction of refusal evidence in criminal proceedings, *see Opinion of the Justices*, 412 Mass. 1201, 1211 (1992), does not apply.

[8] To the extent that the Complaint alleges that Lynch misapplied the PCS by confusing the legal definition of "incapacitation" with that of "intoxication," the mistake (if there was one) is not actionable under § 1983. *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1189 (5th Cir. 1991);

8

ORDER

For the foregoing reasons, defendant's motion for summary judgment is <u>ALLOWED</u>.  The Clerk will enter the judgment and close the case.

SO ORDERED.

<u>/s/ Richard G. Stearns         </u>
UNITED STATES DISTRICT JUDGE

---

*see also Boveri v. Town of Saugus*, 113 F.3d 4, 7 (1st Cir. 1997) ("A regulatory violation, like a violation of state law, is not inherently sufficient to support a § 1983 claim.").  Neither the U.S. Constitution nor federal law secures a right of public drunkenness. *Cf. Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) (simple mistakes of law, as well as fact, if objectively reasonable, do not require an exclusionary remedy).